Burlington Insurance Company v. American Empire Surplus Lines, et al. Navigators Insurance Company v. Skyline Restoration, Inc. And Mr. Gerton, Ms. Gerton, I see that you reserve two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. Good morning. Your Honors, this is an insurance duty-to-defend case, and under basic principles of contract interpretation and existing New York law, Skyline should be entitled to defense from both Burlington and American Empire. Although in the briefs we lay out the trends of case law nationally, I think that if you review the existing precedent carefully, there's a way for this Court to rule in our favor without overturning or contradicting any existing New York law. It all comes down to the unique facts of our case, which are distinguishable from the cases that the insurers rely on. For example, the George A. Fuller decision, which is one of the most cited cases in this arena in New York, has to do with a situation where the entire building at issue was the general contractor's work. Ms. Gerton, none of those cases really make those distinctions. They state categorically, for example, the National Union case, there is no occurrence under commercial general liability policy where a faulty construction only damages the insurer's work. Correct. There's no, you know, distinctions that are made, and we're not talking about one case. We're talking about an uninterrupted 20-year line of cases that have all said the same thing. Some of them involve subcontractors, the Pevereen case, the National Union case. So I find it hard to understand how you say this is an undoing, or not undoing because it's not the New York Court of Appeals, but that this is inconsistent with the holdings of these other cases. I understand there may be a separate question whether we should certify this or not. Correct. Whether there's enough now on the other side, outside of New York, to suggest the New York Court of Appeals might come out differently. But the idea that this is how, that all these cases are distinguishable, I find very hard to see. So I understand that, Your Honor. And I look back at all of these very carefully, and I do really believe this, because although they say they don't make those fine-point distinctions, they talk about the insured's own work. And that's the key there. And all of those cases, they set out what the insured's work was. Pevereen and National Union involve subcontractors, right? Sure. Or the work of subcontractors. But here, the distinguishing fact is that we only worked on the roof. The apartment complex was built and finished long before this roof repair job was performed. This was just a renovation of the roof. We were never hired, nor was anybody else even working on the interior of the building or the rest of the apartments, at the time that the work was performed or when the damage occurred. I don't understand where New York, these New York courts would make that a distinguishing feature. I don't know where you're getting that from. There's not any case on the other side that makes such a distinction. Your Honor, respectfully, I disagree. Because if you look at Fuller, they quoted from Zandri Construction and said, the risk that they intended to cover was the possibility that the work product of the insured, once completed, would cause property damage other than to the product or completed work itself, for which the insured might be fined liable. That's exactly what we have here. Their completed work, the roof, arguably, allegedly, caused damage to something else, existing property, third-party property. It wasn't their work. So you're saying that there's no New York case that goes in your favor on this issue? That's fair, but that's why I think that you can still rule in our favor by looking at the facts carefully, which is required, you know. Let me ask you another question. Sure. I know that there was a change of the form in 1986. Yes. This issue regarding the exclusion, exception to the exclusion. Correct. But why, if that was in 1986, why haven't the New York courts addressed that? None of the New York cases, almost all of which are after 1986, none of them mention that exclusion. So if that form was being widely used after 1986, why has it never come up? The change in 1986 was not to the occurrence terminology. It was a bunch of other changes. And honestly, I think that most of the cases elsewhere, slowly over time, have come to recognize the differences. And New York still kind of harkens back to the pre-1986 decisions. I know at some point this language in the exclusion, that your work exclusion, appeared in the form, right? Right. Yes. Why didn't they harp on that? Why weren't people arguing to New York courts all these years, like, wait, there's surplusage in New York. I certainly have argued it many times to the New York court, Your Honor. And so has lots of policyholders. And I think the problem is that New York has this uniquely unfavorable law that says that the whole work, the general contractor's work is the entire project. So in that case, it's very hard, if you have a ground-up construction, for a general contractor to show that there's damage to something other than their work. And that's why I think our case is different here. Because we weren't building the whole building. We just built the roof. And our roof damaged, allegedly, this existing property. It'd be like if you damaged a neighbor's building. That would clearly be an occurrence, because that was something that they had no control over. And it was a fortuitous loss. But even if there's some validity to that argument, isn't it presumptuous? I know the Tenth Circuit came out differently on this. But isn't it presumptuous for a federal court, even when all the cases in New York appear to go the other way, to say, you know what? We're going to predict the New York Court of Appeals is going to ignore all those cases because of these distinctions that you're pointing out. Yeah. At a minimum, if we had any concerns, why wouldn't we certify to them, as opposed to doing what the Tenth Circuit did? You know, the dissent in the Tenth Circuit said basically what I just said. They should certify. Yeah. This is presumptuous for a federal court to do this. Your Honor, I'm completely in agreement that this would be a fair case to certify to the Supreme Court. You agree this is an important policy consideration. This is a critical issue for policyholders and insurers in New York. And it would be, this would be an excellent case to have before the New York Court of Appeals on this issue, because I think it could very clearly overturn Fuller and clarify the law, which I think in, I want to say it's 20-something states, has gone the other way. So, yes, I agree. And we have that, you have that ability, obviously, to certify this to the Court of Appeals. I also think that it's possible, like I said before, for you to easily dispose of this if you cut through the actual facts of our case. And I can walk through some of the locations in the record where we cite to the damage of our roof, our roof that we installed causing damage to the existing building. You know, the complaint alleges several times that there was damage, including but not limited to, leakage and seepage. The bill in particular talks about the repair to the damage of the interior walls of the property. There's a lost memo that was included in Affiliated FM's folder about repairing and replacing interior hallways. The duty to defend is a broad standard. That's the whole purpose of purchasing liability insurance, is to have litigation insurance that protects insurance from any potentially covered claim. And here, I think clearly we've met that standard of having a potentially covered claim. The exclusions can be applied when indemnity comes to the forefront. When the underlying case is determined, which it's been stated for several years because of bankruptcy, unfortunately. But once that is determined, the exclusions can deal with how much of the actual cost is covered versus uncovered. But the defense should be an easy question that should go in favor of Skyline in this case. Can I just ask you about this argument? You didn't spend much time on it, but that the claims here are for more than just the roofs. In the underlying complaint, there's only reference. If you look at paragraph 27 and the similar paragraph for the other cause of action, when they talk about the damages, it says a direct and approximate result of Skyline's breach. The roofs on the four buildings were damaged, requiring Dayton Beach to remove and replace those roofs that amount in excess of $4.5 million. And then it demands damages in excess of $4.5 million. There's no reference to anything, any other damage other than to the roofs, right? So, I don't quite read it that way because they talk about... Should I leave out? Of course, because it talks about four of the five new roofs failed, causing significant and irreparable damage. That, to me, suggests something else, including but not limited to. But the key really is the Bill of Particulars, which talks about the replacement of the interior walls. And under New York law, we're entitled to look at extrinsic evidence to determine the... But that's fine, but if you look at where they're asked on question 23, set forth with particularity a calculation of damages in your complaint, the response is only about the roofs, $4.6 million. There's no discussion of anything else. I don't see how you could be clearer with the response to that question, that they're only seeking... Even if there's references elsewhere that could be construed that way, isn't that... When they ask, what are your damages, and they only talk about... They talk about the roof. I'm aware of that. I think that the reality is that this is supposed to be interpreted, if it's vague at all. And I think it is. They were asked, what's the cost differentiation for the roof repair? And they gave that the cost of the roof repair. Like, it could be interpreted another way. And when it comes to the duty to defend, because it's supposed to be so broadly interpreted, it should be ruled in Skyline's favor. And I realize I'm out of time. So thank you, Your Honor. I appreciate it.  All right. It appears that we first have Mr. Adrian Morning. Good morning, Your Honor. You're breaking this up into three, so there might be some overflow. But I just wanted to mention quickly that the moving papers that were filed by the appellant did not call for certification. They called for reversal. There was a footnote, I thought, about certification. The initial papers specifically said for reversal. We don't have to. We can certify. I understand that, Your Honor. Again, James M. Adrian. Why we shouldn't? Well, yeah, there's a reason. And that's why I'm up here. Because you're going to win now. I'm up here to discuss the standard. We respectfully advance that the Court is bound to apply the law as interpreted by the state's intermediate courts unless there is pervasive evidence. Persuasive. Persuasive evidence that the highest court would reach a different conclusion. Well, let me tell you what I think might be the persuasive evidence. For instance, the Tenth Circuit, which had a wrong opinion explaining why they think New York law is different. You have numerous Supreme Courts across the country in the last 15 years overturning their own precedent. They had previously ruled as the intermediate New York courts had ruled. And Indiana in 2010, West Virginia 2013, New Jersey 2016, Michigan 2020, Texas 2007. All overturned their own precedent. You have this language in the exclusion that has never been addressed by any New York appellate court ever. And you have multiple Supreme Courts, state Supreme Courts around the country who have said that matters. The fact that the exclusion has that language in it, if you follow that there shouldn't be surplusage, that should indicate that there's coverage with respect to contractors. The Iowa Supreme Court has said that. The Kansas Supreme Court has said that. Florida and North Dakota and Texas. So why isn't that enough to at least say, you know what? We're a federal court. There's a lot of state Supreme Courts that are overturning precedent, coming out the other way. Let's give this to the New York Court of Appeals to decide. That's not persuasive enough evidence that we should at least let them consider it. The fact that New York may be in the minority is not controlling. The cases that we've looked at talk about the Court of Appeals sends a signal that the That's not the question that you were asked. Right. It's not a question of whether the fact that they're a minority. It's a question of whether to give the Court of Appeals a shot at whether they should be in the, whether there should be this minority. Well, frankly, this should be something I believe that's handled by legislation or regulation as it was done with insurance law 3420. Well, it's been handled by Courts of Appeals, by appellate divisions. So, you know, it can be handled judicially as well. Well, Your Honor, I don't believe the Court of Appeals wanted, took certification on the Mays case. Isn't it also clear that this form was changed in 1986 specifically to try to create coverage with respect to subcontractors? This is the circular where they changed the form. That's exactly what they said. This is, the effect is to provide coverage for damage caused by faulty workmanship to other parts of work in progress and damage caused by a subcontractor's work after the insurance operations are completed. So isn't that what the purpose of changing the form was? These, the forms have changed over years. The cases have, Fuller was... I know, but New York courts have never addressed this change in the form. Which New York court looked at the language that's now in the exclusion in this case and examined it under the, whether or not it's surplusage, we should have surplusage or not, and looking at it in a contract and say, you know what, the language in the exclusion doesn't matter. Which New York court, appellate court, has said that? The court has not looked at that, Your Honor. So isn't that, that's, isn't that reason enough to say, no, we should let the New York Court of Appeals look at this when other supreme courts, state supreme courts around the country think that change in the form is very significant? There's been no indication that the Court of Appeals has sent any signals. They didn't want, they didn't, they denied the certification in the Mays case. We certify all the time when there's no quote-unquote signals. They're not really signaling. We just have to think there's enough out there that they might come out differently than the appellate court. This, well, this, I don't believe that, that being in the, being in the minority and other States' decisions control what New York State does. Why doesn't your interpretation of the policy render the language in the exclusion, the exception to the exclusion, surplusage? Why does that not violate New York's rule that there should be no surplusage in an insurance contract? Those provisions were in front of the appellate courts. There's been 16 appellate courts that have not, that policy uses. Why does that not render it surplusage? It does not render it surplusage? I don't believe it. I don't believe so, Your Honor. Why not? I just, reading, reading the policy in a whole, I don't believe that that is surplusage, Your Honor. All right. That seems like a conclusive response, but all right. Thanks. We'll hear from Mr. McKenna. Good morning. May it please the Court, John McKenna for American Empire Surplus Lines Insurance Company. So I think we're on a topic that I think is important to us. First off, we don't think certification is in order because New York law is settled. It's settled. It's been settled for 30 years. Although we don't have any specific cases dealing with the exception to the exclusion, there are plenty of cases post-'86 that subcontractors, like Judge Bianco has indicated, that subcontractors were deemed not to be, work of a subcontractor was deemed not to be an occurrence. But the court of appeals has said interpretation of the contract that the renderer provision surplusage is a canon that cannot be countenance, that is an interpretation that cannot be countenance under principles of contract interpretation. This is the rule of the New York Court of Appeals. And I asked your co-counsel here, why isn't this render that provision? I think the court should be more directed by the court of appeals ruling in Con Ed versus Allstate. That decision indicated that for contract construction and interpretation, once you don't find that the insuring agreement has been met, that there is no occurrence. That's what the magistrate judge said here in the footnote. But that's not what is at issue here. What I'm sure is not, we're looking at the contract as a whole. So in determining whether or not there's coverage in the first place, an accident is even defined, we can look at the exclusion to see if they bear any, help us understand whether or not there's coverage or not. And if there's a carve out for this exact issue in an exclusion, multiple state supreme courts have said that that carries the day. Let me just ask you this, in Scottsdale, I know we're looking at Connecticut law, but we sent that back because it had the subcontractor exception in it. And we said the failure of the district court to address that was so significant on the issue of whether or not it was within the scope of an occurrence, we're sending it back. So we've even said that in Scottsdale. Right. But there was not, granted there was no 30 years of case law, settled case law in Connecticut, like we have in New York. But I will add that the exception to the exclusion is not meaningless. It's simply inapplicable here. And if the facts were different, it may be. There's never coverage in this situation. You wouldn't need to put it in at all. That's what makes it possible. Well, because, you know, CGL policies are drafted by ISO, who you were referring to their circular judge. They're drafted for robust coverage that is somewhat limited by way of their exclusions. And it's drafted for not only construction contractors, but the whole gamut of who an insured might be. So when we say that, you know, in this instance it's meaningless, I reject that, especially when we are supported by New York law that says in these situations it's not an occurrence. You don't have to go to the exclusions. And I think it would be very improper for a court to decide that an exclusion or an exception to an exclusion would somehow grant coverage. Do you agree with Ms. Gerton that this is an extremely important policy consideration? I'm talking about a contract that's used over and over and over again, right? Right. Isn't that pretty important from a policy standpoint, to let the New York Court of Appeals weigh the risks and benefits of interpreting the insurance contract? Well, that's one part of the test, right? But the other part of the test is, is the law settled? And I do believe that the law is settled and has been settled for 30 years. Well, it's not settled. The New York Court of Appeals has never decided this issue. Well, and they didn't want to take it either in J.W. Mays. In which case? J.W. Mays, the refused certification. Well, they have a right to refuse certification, free certification. Understood, Judge. Understood. What year was that? J.W. Mays. January of 2018. 2018. Oh, yeah. So we've got seven more years of, you know, courts looking at it differently, including the Tenth Circuit, right? Well, and I see I'm running out of time as well, and I'll let my adversary jump in. But I will say that under the plain meaning and interpretation of this policy, and with the settled law in New York, we think the lower court's decision should be affirmed and there is no need for certification as there is settled law here. And, again, meaningful issue is one test. Settled law is the other. All right. Thank you, Mr. McKenna. We'll hear from Mr. Gurr. Thank you, Your Honor. So I was going to deal with the part about third-party damage and that there is no third-party damage in the complaint. Your Honor has pointed that out, and that the court didn't rely on that. But I think that Your Honor has focused on some other issues that I might bring up and address. And I wanted to bring up and address the persuasive evidence issue first. And that, Your Honor, you mentioned Black and Veatch and other State supreme courts, which have ruled in the interim. And in the interim, Your Honor, the Ohio supreme court and the Kentucky supreme court have also ruled and found in favor of the issue of the no coverage for construction defect because it's an accident, Your Honor, and the Ohio supreme court has specifically rejected the surplusage argument that Your Honor raises. And so there's no, you know, and I think the supreme court has talked about this as well, Your Honor, there's no just because other courts have ruled differently doesn't mean New York would rule in that fashion. And, in fact, other State supreme courts have, in fact, rejected this argument, this ISO argument. I wasn't suggesting that the New York court would have to come out their way. I'm just suggesting that there's a lot out there that suggests that reasonable minds disagree on this. Is that a fair assessment? That is an absolute fair assessment, Your Honor. And just to follow up on counsel's comment about J.W. Mays, why J.W. Mays is so important, Your Honor, is that the New York court of appeals rejected cert in January of 2018. Black and Veatch came out in February. But at that point in time, the law had, in this minority view, which now became the majority view, had already changed. And J.W. Mays had ruled that construction defect caused by contractor isn't an occurrence and had an opportunity to, as the court of appeals can do, take a case to address outmoded precedent. And they didn't do that, Your Honor. In fact, they specifically did not do that. And then subsequent to that, as we said, Ohio supreme court came out. And the Rice decision, granted it's a New York state supreme court, Your Honor, but that also declined to follow these other issues with respect to the — And the lower courts just bound to follow the appellate division cases, right? Well, just like this court is bound to follow the appellate division cases if they are on point, and they are on point, Your Honor points out other issues with respect to other things going on in other states and other things. But as Your Honor pointed out, the ISO language has been around for almost 30 years. You've got 14 New York appellate divisions, four district court decisions, and a state supreme court decision, Rice. All — you know, Rice specifically rejected that. And, in fact, the Ammon case, the federal district court case, specifically did address the law on this issue and just declined to follow it. It obviously followed New York appellate court decisions. Now, I just also want to address the issue of surplusage very quickly, Your Honor, with respect to surplusage. And you mentioned the way New York courts interpret, and the Con Ed case came up, because Con Ed said, Your Honor, that you look to obviously the insuring agreement first, which they did, and there's no coverage under the insuring agreement here. Therefore, you don't get to the exclusion, the exception to the exclusion, because there's no coverage because construction defects are not an accident, and subcontractor works — the work of a subcontractor is considered part of the whole, the work. And so if you don't get there, it's not surplusage. Now, it's also not surplusage for the following additional reasons. Number one, you know, New York isn't — the ISO form is written for every state. Some states do find that construction defects are an occurrence. New York does not. So therefore, in other states, it's not surplusage. In New York, though, they found that faulty workmanship of a contractor or subcontractor is not an occurrence. Therefore, you don't get to that. And that's how you look at — when you're interpreting policies in New York, you first look to the insuring agreement. And also, this — the contractor — the exception to the work exclusion, you can't create coverage through an exception or through an exclusion or an exception to an exclusion. That's not permitted, Your Honor. And you wouldn't look to parole evidence because it's clear that this type of language is not an occurrence under the policy. And you could have examples where, for example, there was some negligence which potentially could have caused damage, not breach of contract or breach of warranty, which are the claims being made here for which coverage is sought. Yes. And finally, just one last point, Your Honor. You're representing Navigators, right? Yes, Your Honor. And — Oh. Sorry. Good.  I wasn't sure. You had a jurisdictional issue here. Is Navigators — is there diversity of jurisdiction here? Because the question really is whether Navigators has a — is doing business in Connecticut or not. You said New York in your papers, but in Connecticut, it's controlled by Hartford. There was a Q3 filed with the SEC that Navigators was — had listed a Stanford address. And also, the addresses of the officers and directors are all in Connecticut. And they list their office as 1 Hartford Plaza, Connecticut. So there seems to be some confusion, at least, as to whether or not it's — you're in New York or in Connecticut for purposes of principal place of business. Your Honor, I wasn't aware that that was an issue in the papers that I — Well, it's not an issue in the papers. Okay. But we have a duty to find out whether we have jurisdiction. And some of us have very inquisitive law folks who go beyond the papers and rely on the Internet to some extent. Right. You might like some — you might like time to respond to this, because it's kind of a shocker coming out of the blue for you. Your Honor, if Your Honor is interested in it, I would like to have time to respond to it, and if I may — Well, there's the two things. Yeah. One is whether or not there's diversity. And if there isn't diversity, can the parties be kind of rearranged according to interests in terms of deciding whether there's diversity of interests? And that may be true, because it seems to me that you have Skyline on one side and all the other insurance companies on the other. Whether or not they are — you know, Burlington's position is a plaintiff, and they have Connecticut — they're doing business in Connecticut. But Navigators may be as well. And there's also some evidence that Navigators was doing — the principal place of business was New York. But it's unclear. And, Your Honor, I would not want to speak out of turn, since I was not prepared to speak on this point, because it was not raised. So I would like time, if that's all right, to go back and address it. Putting aside the issue of where the principal place of business is, just on Judge Walker's second point, you would agree that if we were to align the interests in this case, that your interests are properly aligned with Burlington's interests? Because Burlington would be the one that would be — because they're a citizen of Connecticut, would be the problem. But you agree that your interests are aligned with Burlington's interests for purposes of this case, right? Basically, occurrence versus no occurrence. Correct. You're taking the same position they are, right? Yes, Your Honor. And Burlington, too. They'll say no occurrence. Correct. All the insurers are saying that there's no occurrence, and therefore there's no coverage under the policy. That would be the answer. If you could — and obviously all the lawyers can comment on this — but if you could just send us a letter within a week from today indicating whether or not Navigators' principal place of business is Connecticut or New York, and explaining why that is. And even assuming it is Connecticut, just again stating what you've stated here, that you believe that properly aligned, that the interests are properly aligned with Burlington and the other insurance companies. And that that's sufficient for diversity purposes. Understood? Yes, Your Honor. Thank you. All right, Ms. Gergen, you have two minutes in rebuttal. Thank you, Your Honors. Just for the record on that issue, I concur that the insurers are aligned against us. It's sort of a unique case where one of the insurance companies filed suit against their policyholder, and they brought other parties in, but the insurers are all aligned. So I think we should be able to get that to you fairly shortly later. Just in response, I wanted to highlight the fact that this is such a critical issue, and I don't see any good reason why you shouldn't certify it to the New York Supreme Court. This is so important, as a matter of fact, that we have 26 highest courts throughout the country that have weighed in on it, a number of which — which overturned previous — You want us to rule against all the appellate divisions, then? I'm sorry, I — You want us to rule against the holdings of all the appellate divisions? My first ask is — As it's very straightforward from your perspective. That is my first ask, is to say, if you agree with me that our facts are distinguishable, there's a way to rule where you don't have to overturn previous precedent. You can distinguish our case on the facts and rule it consistently. If you don't believe me on that point, then this case is perfect for certification, because there are — this is not settled law in New York. There are many different cases. Some of them are well-reasoned. Some of them are very short, less than a paragraph. And, frankly, it's — this is a billion-dollar industry, at least here in New York City, construction. With giant construction going on all of the time, huge policies being placed, it's critical for this issue to be settled like it's been settled in many other states. And what I was going to say, essentially, is that numerous jurisdictions have actually overturned their prior precedent. We've got — New Jersey is the best example. The Wedo v. Stony Brook case was the seminal case that everyone cited to for 30 years. And in 2016, in the Cypress Point case, they changed their mind because of the differences in the forms. So I think this case is a perfect test case for the New York State Court of Appeals. And thank you very much. Thank you. Let me just ask Mr. Adrian and Mr. McKenna, just on this issue with respect to jurisdiction, that do you both agree that even assuming the principal place of business is Connecticut, that their navigators are properly aligned with your clients? Yes, sir. Yes, Your Honor. OK. All right. Thank you very much. That was helpful. We're going to reserve decision. Have a good day. Thank you very much.